UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

  v.

WESTON CAPITAL ASSET MANAGEMENT
LLC, ALBERT HALLAC, and
KEITH WELLNER,

      Defendants,

JEFFREY HALLAC,

      Relief Defendant.
_____

# COMPLAINT

Plaintiff Securities and Exchange Commission alleges:

## INTRODUCTION

1. Beginning in August 2011, Weston Capital Asset Management LLC and its principal Albert Hallac perpetuated a fraud at a cost of more than $17 million to a hedge fund they manage. Under a purported swap transaction with a consulting and investment firm known as Swartz IP Services Group Inc., they drained the Weston-managed hedge fund Wimbledon Fund SPC ("Wimbledon") Class TT Segregated Portfolio ("TT Portfolio").

2. Hallac authorized money transfers to Swartz IP in contravention of the investment strategy and objective of the TT Portfolio without conducting any due diligence into Swartz IP or its intended investments. Weston's general counsel, Keith Wellner, knew about the TT Portfolio

transfers and assisted Weston and Hallac's fraudulent activities.  Further, Hallac, his son Jeffrey Hallac, and Wellner collectively received $750,000 from Swartz IP.   This money was investor money dedicated to the TT Portfolio which had been transferred to Swartz IP.

3. Despite the fact that Weston and Hallac drained the TT Portfolio almost dry, TT Portfolio investors continued to receive account statements falsely reflecting their investment was performing as well, if not better, than before.

4. Through their conduct, Weston and Hallac violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Exchange Act Rules 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c), and Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(1), (2), and (4) and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.  Wellner aided and abetted Weston and Hallac's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Exchange Act Rules 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c), and Sections 206(1), 206(2) and 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(1), (2), and (4) and Rule 206(4)-8(a)(2) thereunder, 17 C.F.R. § 275.206(4)-8(a)(2). Unless restrained and enjoined, the Defendants are reasonably likely to engage in future violations of the federal securities laws.

## DEFENDANTS AND RELIEF DEFENDANT

5. Weston is a Delaware limited liability company formed in 2000 with its principal place of business in West Palm Beach, Florida.  Weston registered with the Commission as an investment adviser effective September 2001.  On April 1, 2013, Weston filed a Notice of Withdrawal from Registration as an Investment Adviser.  Then, on June 26, 2013, Weston registered with the Commission as an Exempt Reporting Adviser.

6. Hallac, 76, is a resident of Palm Beach, Florida. He is Weston's founder and president, and at all relevant times, controlled Weston.

7. Wellner, 47, is a resident of New York, New York. He was Weston's general counsel, chief compliance officer, and chief operating officer during the relevant time period.

8. Jeffrey Hallac, 39, is a resident of West Palm Beach, Florida. He is Hallac's son and a managing director at Weston.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

10. This Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because the Defendants' acts, transactions, practices, and courses of conduct giving rise to the violations alleged in this Complaint occurred in the Southern District of Florida. In addition, Weston's principal place of business during the relevant time period was in the Southern District of Florida, and the individual Defendants currently reside and/or resided during the relevant time period in the Southern District of Florida.

11. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, transactions, practices, and courses of conduct set forth in this Complaint.

**FACTUAL ALLEGATIONS**

**I.      Background**

12.     As a registered investment adviser, Weston provided discretionary investment management and sub-advisory services to domestic and foreign private investment funds, as well as domestic and foreign institutions and high net worth individuals. In the beginning of 2011, Weston managed over a dozen unregistered hedge funds with combined total assets of approximately $230 million.

13.     One of the funds Weston managed was Wimbledon, which was segregated into five separate classes of investment portfolios. Pursuant to the Management Agreement between Weston and Wimbledon, Weston's authority as to each Segregated Portfolio was:

> To direct the investment, reinvestment, allocation and reallocation and otherwise manage the Assets of each Segregated Portfolio, both directly and indirectly, <u>consistent with the investment objectives, strategies and policies of each Segregated Portfolio</u>, as set forth in the Memorandum and the applicable Explanatory Memorandum; and to enter into any agreement and to do any and all acts and things <u>for the preservation, protection, improvement and enhancement in the value of the Assets.</u>

14.     Weston's obligations under the Management Agreement included "undertak[ing] to give each Segregated Portfolio the benefit of its best judgment, efforts, and facilities in rendering its services."

15.     One of the five investment portfolios in Wimbledon was the TT Portfolio, which required a minimum $100,000 investment. Under the TT Portfolio's mandate in its Explanatory Memorandum, the TT Portfolio invested all of its investor monies either directly or notionally in the Tewksbury Investment Fund Ltd. ("Tewksbury"). The TT Portfolio's Explanatory Memorandum provides:

> All of the assets attributable to the Class TT Shares (the "Class TT Assets") are invested, either directly or notionally (through the acquisition of a leveraged, structured, over-the-counter option), in [Tewksbury] (the "Class TT Portfolio").
>
> \*     \*     \*
>
> The success of the class TT Segregated Portfolio is dependent upon the expertise of [Tewksbury]. Because all of the Class TT Assets are invested, directly or notionally, in [Tewksbury], the principals of [Tewksbury] either personally manage, or delegate to trading advisors [] the trading decisions of [Tewksbury]…

16. Tewksbury is a multi-billion dollar hedge fund that was established in approximately 1988, and has been closed to new investments since approximately 1994. The TT Portfolio's Explanatory Memorandum promoted Tewksbury's diversified investment approach, which included: (i) proprietary securities trading under Tewksbury's direct control; (ii) investments made through chosen outside investment managers; and (iii) interest income from "funds invested in short-term, low risk interest bearing accounts and U.S. Treasury Bills."

17. Tewksbury's capital allocation routinely included approximately 30% in U.S. Treasury bills. In 2011, Tewksbury had liquidity and was producing monthly returns of approximately 0.36%. From its inception until November 2011, the TT Portfolio was invested entirely in Tewskbury, either directly or notionally.

## II.     Weston and Hallac's Wrongful Transfer of TT Portfolio Monies to Swartz IP

18. Despite the clear mandates of the Management Agreement and the Explanatory Memorandum, Weston and Hallac effected the TT Portfolio's redemption of its investment in Tewksbury and misappropriated TT Portfolio money in connection with a transaction that went against the TT Portfolio's stated strategy.

19. Specifically, Weston and Hallac effected the TT Portfolio's redemption of approximately $12.5 million of its investment in Tewksbury in two transactions of $10 million and $2.5 million, in August and September, 2011, respectively.

20. During this same time, Hallac and Weston solicited and received investments for the TT Portfolio, knowing these investment funds would not be invested in Tewksbury. Hallac and Weston did not disclose this intended shift to investors.

21. On October 21, 2011, in contravention of the TT Portfolio's Explanatory Memorandum, Weston and Hallac authorized a wire transfer from the TT Portfolio for this $12.5 million to a Swartz IP bank account, which ultimately received the funds on November 17, 2011. Weston did not conduct any due diligence on Swartz IP prior to entering into this transaction.

22. As soon as Swartz IP received the $12.5 million, it disbursed the funds, primarily to a special purpose entity ("SPE") created to support and finance varying medically related business ventures. Swartz IP also disbursed the funds to support another fund under Weston's management.

23. In December 2011, Weston and Hallac, after an additional redemption out of Tewksbury, wired approximately an additional $5 million of TT Portfolio monies to Swartz IP. Again, Swartz IP disbursed the money primarily to support the SPE and also for the other fund under Weston's management. These transactions were not direct or notional investments in Tewksbury, as required under the Management Agreement.

24. Each of these three transactions was accomplished with Weston, Hallac, and Wellner's knowledge and consent. Weston, Hallac and Wellner participated in multiple conference calls and engaged in multiple email communications with Swartz IP to negotiate and coordinate the TT Portfolio's redemption of the $17.5 million out of Tewksbury for the benefit

of Swartz IP. Weston, Hallac and Wellner knew that such redemptions for the benefit of Swartz IP were in contravention of the TT Portfolio's Explanatory Memorandum's proscriptions.

25. In addition to diverting money to unauthorized investments, Hallac, Wellner, and Jeffrey Hallac collectively received $750,000 from Swartz IP. Approximately one week after Swartz IP received the $12.5 million from the TT Portfolio, Hallac opened a bank account in the name of Purplebox LLC ("Purplebox"). Hallac formed this entity, with himself, his son, and Wellner all being members. Swartz IP wired $750,000 of TT Portfolio monies to the Purplebox account. Hallac then received $240,000 and J. Hallac and Wellner each received $120,000 from Purplebox into their personal accounts.

### III.   Masking TT Portfolio's Tewksbury Exit to Investors

26. To formalize the TT Portfolio's transfer of money to Swartz IP, approximately one month after Weston and Hallac authorized the $12.5 million of TT Portfolio money to be wired to Swartz IP, the parties entered into a written agreement purporting to represent a swap transaction. On or around November 14, 2011, Swartz IP and the TT Portfolio entered into a Note Purchase Agreement ("Agreement"). Wellner edited the Agreement into its final form.

27. The Agreement provided Swartz IP would issue reference notes in the principal amount of up to $25 million, starting with a first tranche of notes in the principal amount of $12.5 million. Under the terms of the Agreement, the principal amount of the notes would either be decreased or increased each month to reflect the performance increase or decrease in the monthly net asset value ("NAV") of Tewksbury, plus an additional one percent.

28. The Agreement also provided, effective December 1, 2011, when an investor made a redemption request to the TT Portfolio, Swartz IP, upon 30 days written notice from the

7

TT Portfolio, would repay a portion of the principal amount of the Swartz IP Notes equal to 50% of the requested redemption amount set forth in the notice.

29. Despite the fact the TT Portfolio began to lose value immediately upon its withdrawal from Tewksbury and transfer to Swartz IP, Weston and Hallac continued to authorize and prepare a reporting document to the TT Portfolio's administrators for the issuance of account statements to investors that reflected the TT Portfolio's investments were performing as well as they had in the past, if not better.

30. Indeed, from October 2011 through at least July 2012, investors' monthly statements indicated the NAV of their shares was equal to Tewksbury's NAV plus the 1% as required in the Agreement, amortized over 12 months. These statements were false, as the true value of the TT Portfolio — increasingly and then almost exclusively tied to the value of the Swartz IP notes — was plummeting.

31. By July 2012, only $15,000 in cash remained the Swartz IP's bank and brokerage accounts of the $17.7 million it received from Weston in 2011. Indeed, by July 2012, investments in the SPE and other entities by Swartz IP had resulted in net losses of more than $12 million.

32. Weston never informed investors of its intent to have the TT Portfolio wire funds to Swartz IP, and did not tell investors when their money was redeemed out of Tewksbury and transferred to Swartz IP. Consequently, from the time prior to the initial Swartz IP transaction through July 2012, the monthly account statements for TT Portfolio investors misrepresented the true value of the investors' shares.

33. With the true value of the Swartz IP reference notes having been decimated, when investors attempted to redeem their funds out of the TT Portfolio, Swartz IP was unable to satisfy

its obligation to prepay a principal amount of the Notes equal to 50% of the redemption amount as noticed by the TT Portfolio on behalf of its investors.

## COUNT I

### VIOLATIONS OF SECTION 10(b) AND RULES 10b-5(a) AND (c) OF THE EXCHANGE ACT
### (As to Defendants Weston and Hallac)

34. The Commission repeats and realleges paragraphs 1 through 33 of its Complaint.

35. Starting no later than August 2011, Weston and Hallac, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; and (b) engaged in acts, practices and courses of business which have operated, are now operating or will operate as a fraud upon the purchasers of such securities.

36. By reason of the foregoing, Weston and Hallac have directly or indirectly violated and, unless enjoined, are reasonable likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c).

## COUNT II

### AIDING AND ABETTING WESTON AND HALLAC'S VIOLATIONS OF SECTION 10(b) AND RULES 10b-5(a) AND (c) OF THE EXCHANGE ACT
### (As to Defendant Wellner)

37. The Commission repeats and realleges paragraphs 1 through 33 of its Complaint.

38. Starting no later than August 2011, Weston and Hallac, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud and engaged in acts, practices and courses of business which have

operated, are now operating or will operate as a fraud upon the purchasers of such securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c).

39. Wellner, directly and indirectly, from at least August 2011 through June 2012, aided and abetted Weston and Hallac's violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c).

40. By reason of the foregoing, Wellner directly or indirectly violated, and unless restrained and enjoined is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a) and (c).

## COUNT III

### VIOLATIONS OF SECTIONS 206(1) AND 206(2) OF THE ADVISERS ACT
**(As to Defendants Weston and Hallac)**

41. The Commission repeats and realleges paragraphs 1 through 33 of its Complaint.

42. Starting no later than August 2011, Weston and Hallac, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities: (a) with scienter employed devices, schemes, and artifices to defraud clients or prospective clients; and (b) engaged in acts, practices and courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

43. By reason of the foregoing, Weston and Hallac have violated, and unless enjoined, are reasonably likely to continue to violate Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

## COUNT IV

### VIOLATIONS OF SECTION 206(4) AND RULE 206(4)-8 OF THE ADVISERS ACT
### (As to Defendants Weston and Hallac)

44. The Commission repeats and realleges paragraphs 1 through 33 of its Complaint.

45. Starting no later than August 2011, Weston and Hallac, while acting as investment advisers, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, engaged in acts, practices, or courses of business that were fraudulent deceptive, or manipulative.

46. By their conduct, Weston and Hallac, while acting as investment advisers to a pooled investment vehicle: (a) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors in the pooled investment vehicle; and (b) engaged in acts, practices and courses of business that were fraudulent, deceptive, or manipulative with respect to investors in the pooled investment vehicle.

47. By reason of the foregoing, Weston and Hallac have violated, and unless enjoined, are reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8.

## COUNT V

### AIDING AND ABETTING WESTON AND HALLAC'S VIOLATIONS OF SECTIONS 206(1) AND (2) OF THE ADVISERS ACT
### (As to Defendant Wellner)

48. The Commission repeats and realleges paragraphs 1 through 33 of its Complaint.

49. Starting no later than August 2011, Weston and Hallac, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, and while engaged in the

11

business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities: (a) with scienter employed devices, schemes, and artifices to defraud clients or prospective clients; and (b) engaged in acts, practices and courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

50. Wellner, from at least August 2011 through June 2012, aided and abetted Weston and Hallac's violations of Sections 206(1) and (2) of the Advisers Act.

51. By reason of the foregoing, Wellner violated, and unless enjoined, is reasonably likely to continue to violate Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

## COUNT VI

### AIDING AND ABETTING WESTON AND HALLAC'S VIOLATIONS OF SECTION 206(4) AND RULE 206(4)-8(a)(2) OF THE ADVISERS ACT
**(As to Defendant Wellner)**

52. The Commission repeats and realleges paragraphs 1 through 33 of its Complaint.

53. Starting no later than August 2011, Weston and Hallac, while acting as investment advisers, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, engaged in acts, practices, or courses of business that were fraudulent deceptive, or manipulative.

54. By their conduct, Weston and Hallac, while acting as investment advisers to a pooled investment vehicle engaged in acts, practices and courses of business that were fraudulent, deceptive, or manipulative with respect to investors in the pooled investment vehicle.

55. Wellner, from at least August 2011 through June 2012, aided and abetted Weston and Hallac's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(2).

56. By reason of the foregoing, Wellner violated, and unless enjoined, is reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8(a)(2), 17 C.F.R. § 275.206(4)-8(a)(2).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### Declaratory Relief

Declare, determine and find the Defendants committed the violations of the federal securities laws alleged in this Complaint.

### Permanent Injunctive Relief

Issue a Permanent Injunction, restraining and enjoining Defendants Weston and Hallac, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a) and (c), and Sections 206(1), (2) and (4) of the Advisers Act and Rule 206(4)-8 thereunder; and restraining and enjoining Defendant Wellner, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him, and each of them, from aiding and abetting violations of Sections 206(1), (2), and (4) of the Advisers Act and Rule 206(4)-8(a)(2) thereunder, and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder.

### Disgorgement and Prejudgment Interest

Issue an Order requiring each Defendant and Relief Defendant to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

**Civil Money Penalties**

Issue an Order directing each Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:   June 23, 2014

                        Respectfully submitted,

By:   */s/ Russell Koonin*
      Russell Koonin
      Senior Trial Counsel
      Fla. Bar No. 474479
      E-mail:  Kooninr@sec.gov
      Direct Dial:  (305) 982-6385

      Julie M. Russo
      Senior Counsel
      Fla. Bar. No. 388947
      E-mail:  Russoj@sec.gov
      Direct Dial:  (305) 416-6244

      Attorneys for Plaintiff
      **U.S. Securities and Exchange Commission**
      801 Brickell Avenue, Suite 1800
      Miami, Florida 33131
      Telephone:     (305) 982-6300
      Facsimile:       (305) 536-4154